Daniel M. Hattis (SBN 232141)
Email: dan@hattislaw.com
Paul Karl Lukacs (SBN 197007)
Email: pkl@hattislaw.com
HATTIS LUKACS & CORRINGTON
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650
Facsimile: (425) 412-7171

*Attorneys for Plaintiffs*
*and the Proposed Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHALEY GERMAN, SHANNON SOLANDER, and BRIAN STERE, for themselves, as private attorneys general, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STITCH INDUSTRIES, INC. d/b/a JOYBIRD,<br><br>Defendant. | Case No. 2:26-cv-01820-FLA-SSC<br><br>**<u>CLASS ACTION</u>**<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>**(1) VIOLATION OF CAL. CIVIL CODE § 1750 *et seq.*;**<br><br>**(2) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17500 *et seq.*;**<br><br>**(3) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200 *et seq.***<br><br>**ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF**<br><br>JURY TRIAL DEMANDED |

Plaintiffs Shaley German, Shannon Solander, and Brian Stere, individually, as private attorneys general, and on behalf of all others similarly situated, allege as follows, on personal knowledge and the investigation of their counsel, against Defendant Stitch Industries, Inc., d/b/a Joybird ("Joybird" or "Defendant"):

## I. INTRODUCTION AND SUMMARY

1. Joybird is a direct-to-consumer manufacturer and e-commerce retailer of upholstered furniture including sofas, sectionals, and other furniture. Joybird primarily sells its products on the Joybird website, www.joybird.com. All the items offered for sale by Joybird are manufactured by Joybird and are offered and sold exclusively by Joybird and are not available anywhere else.

2. For years, Joybird has engaged in a massive and consistent false discount advertising scheme across its website and in its retail stores. Specifically, Joybird advertises perpetual or near-perpetual discounts—typically 30% to 50% off—on all its products. These discounts are taken from Joybird's inflated and self-created strikethrough reference prices for its products. Joybird represents these reference prices to be the regular and normal prices of the products. However, unbeknownst to its customers, Joybird's discounts are never-ending, and the products are never or almost never offered at the supposed regular price—and never in good faith.

3. Joybird also falsely advertises that the purported savings are for a limited time and indicates that its products will return to the full price after the sale ends, when in fact the advertised savings are perpetual and never-ending.

4. Joybird's false discount advertising is so pervasive across all of its products and its advertising that it is apparent that the heart of Joybird's marketing plan is to deceive the public.

5. Joybird's intent is to trick consumers into believing that its products are worth, and have a market value equal to, the inflated reference price, and that the lower advertised sale price represents a special bargain. Joybird perpetrates


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

this illegal scheme in order to induce consumers to purchase its products and to charge more for its products than it otherwise could have charged.

6. Joybird's false discount advertising harms consumers like Plaintiffs by causing them to pay more than they otherwise would have paid and to buy products that they otherwise would not have bought. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("[W]hen a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under the UCL and FAL because he has suffered an economic injury.").

7. Customers do not enjoy the actual discounts Joybird promises them, and the products are not in fact worth the amount that Joybird represents to them. Joybird's deceptive pricing scheme also artificially increases the demand for its products and causes all customers, including Plaintiffs and Class members, to pay price premiums to Joybird.

8. Plaintiffs bring this lawsuit individually and on behalf of a Class comprised of consumers in the United States other than those residing in California, Oregon, or Washington State who purchased from the Joybird website one or more products advertised with a discount.

9. California law applies to the claims of Plaintiffs and the Class for the reasons further described below, including because they agreed to the Joybird website Terms of Use which contains a California choice of law clause.

10. Joybird's false discount advertising violates California's Consumers Legal Remedies Act (CLRA), California Civil Code § 1750 *et seq.*; False Advertising Law (FAL), California Business & Professions Code § 17500 *et seq.*; and Unfair Competition Law (UCL), California Business & Professions Code § 17200 *et seq.*, in numerous ways, as detailed in this Complaint.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

11. Plaintiffs seek damages and/or restitution for themselves and for each of the Class members. Additionally, Plaintiffs, acting as private attorneys general, seek public injunctive relief to protect the general public by enjoining Joybird from engaging in the unlawful false discount advertising scheme alleged herein.

## II. THE PARTIES

12. Plaintiff Shaley German is a citizen and resident of the city of Littleton, in Arapahoe County, Colorado, and is an unsophisticated consumer party. Ms. German made a purchase from the Joybird website and is a victim of Joybird's false discount advertising scheme.

13. Plaintiff Shannon Solander is a citizen and resident of the city of Brooklyn, in Kings County, New York, and is an unsophisticated consumer party. Ms. Solander made a purchase from the Joybird website and is a victim of Joybird's false discount advertising scheme.

14. Plaintiff Brian Stere is a citizen and resident of the city of Clermont, in Lake County, Florida, and is an unsophisticated consumer party. Mr. Stere made a purchase from the Joybird website and is a victim of Joybird's false discount advertising scheme.

15. Defendant Stitch Industries, Inc. d/b/a Joybird is Delaware corporation headquartered in Los Angeles, California.[1] Joybird is a direct-to-consumer e-commerce retailer and manufacturer of upholstered furniture and primarily conducts its sales through its website, www.joybird.com. All the items offered for sale by Joybird are manufactured by Joybird and are offered and sold exclusively by Joybird and are not available anywhere else. Joybird has a warehouse distribution center in San Diego, California.[2] Joybird also has 15 physical retail stores across the United States, including 5 in California.

[1] *See* https://joybird.com/the-factory.

[2] *Ibid.*



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

## III. JURISDICTION AND VENUE

16. **Subject Matter Jurisdiction.** This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy, exclusive of interest and costs, exceeds $5,000,000, and this is a proposed class action in which there are members of the proposed Class who are citizens of a state different from Joybird.

17. **Personal Jurisdiction.** This Court has personal jurisdiction over Defendant because: (1) Defendant is registered to do business in California and has its corporate headquarters in California, (2) Defendant regularly conducts business in California including via the retail website www.joybird.com and by operating 5 retail stores in California; (3) Defendant has committed tortious acts within California or has committed tortious acts outside California which had an impact within California (as alleged, without limitation, throughout this Complaint); and (4) the Terms of Use on the Joybird website specify that Defendant and its customers "consent to the exclusive jurisdiction and venue of courts in the County of Los Angeles, California, U.S.A., for all disputes." Defendant has sufficient minimum contacts with California to render the exercise of jurisdiction by this Court permissible.

18. **Venue.** Venue is proper under 28 U.S.C. §1391 because Defendant is a California citizen who resides in and is headquartered in this District (specifically, in Los Angeles County). Furthermore, the Terms of Use on the Joybird website specify that Defendant and its customers "consent to the exclusive jurisdiction and venue of courts in the County of Los Angeles, California, U.S.A., for all disputes." Plaintiffs' declarations establishing that this Court is a proper venue for this action are attached hereto as **Exhibit A**.

## IV. JOYBIRD'S FALSE DISCOUNT ADVERTISING SCHEME

19. Joybird is a direct-to-consumer manufacturer and e-commerce retailer of upholstered furniture including sofas, sectionals, and other furniture.


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

Joybird primarily sells its products on the Joybird website, www.joybird.com. All the items offered for sale by Joybird are manufactured by Joybird and are offered and sold exclusively by Joybird—they are not offered for sale or available for purchase anywhere else.

20. For years, Joybird has engaged in a massive and consistent false discount advertising scheme across its website and in its retail stores. Specifically, Joybird advertises perpetual or near-perpetual discounts—typically 30% to 50% off—on all its products. These discounts are taken from Joybird's inflated and self-created strikethrough reference prices for its products. Joybird represents these reference prices to be the regular and normal prices of the products. However, unbeknownst to its customers, Joybird's discounts are never-ending, and the products are never or almost never offered at the supposed regular price—and never in good faith.

21. Joybird aggressively advertises discounts throughout its website. On its product list pages, Joybird typically advertises the discounts by displaying a strikethrough purported regular price (the reference price) next to a lower discounted selling price in red font (e.g., "~~$2,214~~ $1,107"). See the screenshot below taken from the Joybird website on December 18, 2025.

**Product List Page Displaying Discounted Joybird Furniture - 12/18/2025**




22. On the individual product page, Joybird displays the strikethrough reference price next to the selling price in the same manner, and also states the dollars-off savings preceded by the word "Save" in red font to further indicate

that the reference price was Joybird's previous and regular selling price for the product (e.g., "~~$2,214~~ $1,107 (Save $1107)"). For example, see the screenshot below taken from the Joybird website on December 18, 2025 as part of counsel's investigation.

**Product Page of Joybird Declan Coffee Table - 12/18/2025**




23. Joybird makes similar pricing and discount representations in the online shopping cart, where it displays the strikethrough reference price next to the selling price (e.g., "~~$2,214~~ $1,107"). Joybird also states the dollar-amount saved on the order at the top of the online shopping cart, with the word "saved" and the dollar savings in bold (e.g., "Nice! You've **saved $1,107** on your order!"). For example, see the screenshot below taken after the Declan Coffee Table was added to the online shopping cart.


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

**Joybird Online Shopping Cart – 12/18/2025**




24. Joybird intends that consumers interpret and understand the strikethrough reference prices to stand for Joybird's regular selling prices for those products. Joybird intends that consumers understand the reference price to reflect Joybird's regular former price for the product. Joybird intends that consumers understand the reference price to represent the value of the product. Joybird intends that consumers understand and believe that by purchasing the product that day, consumers will enjoy an unusual and special bargain—specifically, that consumers will enjoy the advertised dollars-off and percentage-off savings from the product's regular price.

25. Counsel's investigation has revealed that Joybird advertises perpetual discounts on all of its products, and these products are never or almost never sold at their stated reference prices.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

26. For example, according to counsel's investigation and data, Joybird has not sold the above shown Declan Coffee Table at its strikethrough reference price since at least December 15, 2024, when it was offered on sale for $886 from the $2,214 strikethrough reference price. Counsel's investigation found that since at least December 15, 2024, Joybird has always advertised the Declan Coffee Table for between $886 to $1,550 since December 15, 2024 through the date of the filing this Complaint, as reflected in the screenshots below.

**Joybird Perpetually Markets Products With False Percentage-Off Discounts**

**Example: Declan Coffee Table**

**12/18/2024**

Selling Price: $886
Reference Price: ~~$2,214~~




**01/23/2025**

Selling Price: $1,550
Reference Price: ~~$2,214~~




**02/21/2025**

Selling Price: $1,107
Reference Price: ~~$2,214~~




**03/20/2025**

Selling Price: $1,107
Reference Price: ~~$2,214~~




**04/21/2025**

Selling Price: $1,107
Reference Price: ~~$2,214~~




**05/21/2025**

Selling Price: $1,107
Reference Price: ~~$2,214~~





HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

**05/21/2025**

Selling Price: $1,107
Reference Price: ~~$2,214~~




**06/21/2025**

Selling Price: $1,107
Reference Price: ~~$2,214~~




**07/21/2025**

Selling Price: $1,107
Reference Price: ~~$2,214~~




**08/21/2025**

Selling Price: $1,107
Reference Price: ~~$2,214~~




**09/21/2025**

Selling Price: $1,107
Reference Price: ~~$2,214~~




**10/21/2025**

Selling Price: $1,107
Reference Price: ~~$2,214~~




**11/21/2025**

Selling Price: $1,107
Reference Price: ~~$2,214~~




**12/21/2025**

Selling Price: $1,107
Reference Price: ~~$2,214~~




**01/21/2026**

Selling Price: $1,107
Reference Price: ~~$2,214~~






HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

27. Based on counsel's investigation, and as the Declan Coffee Table example demonstrates, Joybird invents its purported regular prices (the strikethrough reference prices) out of thin air. Joybird's reference prices and advertised discounts have no basis or relationship to reality.

28. Joybird's false discount advertising described above is typical and representative of the false discount advertising Joybird perpetrates on its website for all of its "discounted" products.

29. Joybird makes similar discount representations in its retail stores. For instance, Joybird frequently has "sale" signs around the inside and at the entrance of its retail stores. Like on its website homepage, these signs advertise purported sales and percentage-off discounts that are the same or substantially similar to the sales and percentage-off discounts offered on Joybird's website.

30. For example, as the screenshot below reflects (red box added), on January 24, 2025, the Joybird website advertised a "Save 30% sitewide" sale in its header banner and additionally represented on the homepage that consumers could "Save 30% on all your favorite pieces." On that same day, Joybird retail stores advertised a similar "30% OFF IN-STORE & ONLINE" sale, as reflected in the photo below taken as part of counsel's investigation on January 24, 2025.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

## Same 30% Off Sale Both Online And In-Store On 01/24/2025








HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

31. For example, as the screenshot below reflects (red box added), on October 30, 2025 the Joybird website advertised a "30% off sitewide" sale in its header banner, as well as additional discounts. On that same day, Joybird retail stores advertised a "SAVE 30% OFF IN-STORE & ONLINE" sale, as reflected in the photo below taken as part of counsel's investigation on October 30, 2025.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

## Same 30% Off Sale Both Online And In-Store On 10/30/2025









HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

32. For example, as the screenshot below reflects (red boxes added), on January 29, 2026, the Joybird website advertised a "Save 30% sitewide" on its header banner and represented on its homepage that consumers could "Enjoy 30% off sitewide." On that same day, Joybird retail stores advertised a "SAVE 30% OFF IN-STORE & ONLINE" sale, as reflected in the photo below taken as part of counsel's investigation on January 29, 2026.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

## Same 30% Off Sale Both Online And In-Store On 01/29/2025









HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

33. In its retail stores, Joybird represents that these purported discounts are taken from the original selling price of its items which are listed on the signage attached or adjacent to the products. These product prices match the strikethrough reference prices displayed on Joybird's website. However, just like the purported percentage-off discounts advertised on the website, Joybird's in-store discounts are similarly never-ending and false because Joybird never or almost never sells the items at their reference prices.

## V. PLAINTIFFS' ALLEGATIONS ARE BASED ON THEIR COUNSEL'S COMPREHENSIVE INVESTIGATION INTO JOYBIRD'S PRACTICES

34. Plaintiffs' allegations concerning Joybird's false discount advertising scheme are based on Plaintiffs' counsel's comprehensive investigation of the Joybird website using counsel's proprietary web scraping software, and also on counsel's investigation of archived Joybird webpages on the Internet Archive's Wayback Machine (available at www.archive.org).[3]

35. Plaintiffs' counsel has been monitoring and scraping the Joybird website on an automated daily basis with a proprietary software program since December 15, 2024. Counsel has compiled and extracted daily pricing and marketing data from the website for most of the products Joybird has offered on its website during this time. In total, counsel has assembled and analyzed a historical database of daily prices and time-stamped screenshots of over 227,000 daily offerings of approximately 1,064 products over this fourteen-month period.

36. Counsel's investigation and data shows that Joybird advertises perpetual discounts for all of its products, typically ranging from 30% to 50% off every product.

---

[3] The Internet Archive is an internet library that archives webpages. For more information, see https://archive.org/about/.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

37. The stated percentage-off and dollars-off discounts are false, and Joybird's reference prices to which the discounts are applied are false and inflated. Joybird has never or almost never offered any of its products at the reference price without a discount—and never in good faith.

38. Additionally, counsel examined over one hundred archived screenshots of the Joybird website on the Internet Archive's Wayback Machine going back to 2021. In every single screenshot that counsel examined, every product shown was displayed with a discount. Based on what counsel was able to observe, Joybird's false discount advertising scheme has been going since at least 2021 and likely earlier.

39. As part of counsel's investigation, counsel has made visits to the Joybird retail store in Seattle, Washington on January 24, 2025, April 2, 2025, and two to four times a month starting on September 13, 2025 through the present.

40. On each visit, Plaintiffs' counsel compared the Joybird retail store prices and discounts (including sale event advertising, the percentage-off signage posted throughout the store and beside the furniture products, the reference prices, and the resulting "discounted" prices for the products), to the Joybird website prices and discounts for those products (including the website-wide sale event advertising, reference prices, and "discounted" prices).

41. Plaintiffs' counsel found that Joybird's website-wide and store-wide sales events, reference prices, advertised percentage-off discounts, and the resulting "discounted" prices for its products, have been and continue to be substantially the same for its products both online and in-store.

42. Furthermore, advertising signage in Joybird retail stores outright states that the advertised sale is both in-store and online. For example, see the photo below of the signage, taken in a Joybird retail store on November 6, 2025,


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

which states: “HURRY – LIMITED TIME OFFER HAPPENING NOW 30% OFF IN-STORE & ONLINE.”

**Joybird Retail Store Sign Stating Sale is Both In-Store & Online**

**(Photo Taken 11/06/2025)**




Also see the photo above at ¶ 32 taken by counsel of the sign at the entrance of a Joybird store which states: “SAVE 30% IN-STORE + SITEWIDE.”

43. Plaintiffs’ investigation into Joybird’s false discount advertising scheme is as thorough as possible under the circumstances. Thus, Plaintiffs’ allegations which are based on information and belief are permissible. “Without an opportunity to conduct any discovery, [Plaintiffs] cannot reasonably be expected to have detailed personal knowledge of [Joybird’s] internal pricing policies or procedures.” *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 568 (9th Cir. 2017). “Because [Plaintiffs] need not specifically plead facts to which she cannot ‘reasonably be expected to have access,’ [their] allegations regarding the fictitious nature of the [reference] prices may properly be based on



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

personal information and belief at [the pleading] stage of the litigation." *Id.* Here, Plaintiffs' allegations are based not only on information and belief, but also on a comprehensive investigation of Joybird's historical website advertising and Joybird's retail stores which was as thorough as possible under the circumstances.

## VI. CALIFORNIA LAW APPLIES TO PLAINTIFFS' CLAIMS

44. California's consumer remedy statutes—the CLRA, the FAL, and the UCL—apply to the claims of all Plaintiffs and Class members.

45. Plaintiffs agreed to the Terms of Use on the Joybird website, which contain a California choice of law clause and apply to Plaintiffs' claims and the claims of the Class members.

46. The current version of the Joybird Terms of Use is available at https://joybird.com/Terms-of-use/ ("Terms"); a copy is attached hereto as **Exhibit B** (captured by counsel on April 19, 2026). As reflected in the footer of the Terms, this version has been posted and effective on Joybird's website since May 19, 2019.

47. The previous version of the Terms was substantially similar, and was in effect from February 21, 2014 through May 18, 2019 as reflected in the footer of that version; a copy is attached hereto as **Exhibit C**.[4]

48. Both versions of the Terms state that they apply to disputes concerning purchases made on the Joybird website, such as the purchases made by Plaintiffs that are the subject of this Complaint. Specifically, the first sentence in both versions of the Terms states:

> "**These Terms of Use (the Terms) govern your access to, use of, and purchases at Stitch Industries Inc. (Joybird, We or our) website (Site located at https://joybird.com/**, our applications for mobile devices, or any other services we offer from time to time

[4] Exhibit C is a screen capture of the Wayback Machine archived webpage originally collected by the Internet Archive on October 3, 2018. *Available at* https://web.archive.org/web/20181003152514/https://joybird.com/Terms-of-use/.


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

> including linked pages (collectively, the Network), so please read these terms carefully before using the Network." (Emphasis added.)

49. Both versions of the Terms state that California law applies to the parties' rights, obligations, and all actions contemplated by the Terms—such as Plaintiffs' disputes concerning their website purchases which are the subject of this Complaint. Specifically, both versions of the Terms state:

> "These Terms of Use, your rights and obligations, our rights and obligations, and all actions contemplated by these Terms of Use will be governed by the laws of the State of California, U.S.A., without regard to conflicts of laws principles, as if this Agreement were a contract wholly entered into and wholly performed within the State of California."

50. Joybird's website also contains Privacy Policy at https://joybird.com/Privacy-policy/, a copy of which is attached hereto as **Exhibit D** (captured by counsel on April 19, 2026). As reflected in the footer of the Privacy Policy, this version has been posted and effective on Joybird's website since August 5, 2025. The previous version of the Privacy Policy was nearly identical, and was in effect from January 1, 2020 through August 4, 2025 as reflected in the footer of that version; it is attached hereto as **Exhibit E**.[5] The version before that was also substantially similar, and was in effect from February 14, 2014 through December 31, 2019 as reflected in the footer of that version; it is attached hereto as **Exhibit F**.[6]

---

[5] Exhibit E is a screen capture of the Wayback Machine archived webpage originally collected by the Internet Archive on April 12, 2020. *Available at* https://web.archive.org/web/20200412165914/https://joybird.com/Privacy-policy/.

[6] Exhibit F is a screen capture of the Wayback Machine archived webpage originally collected by the Internet Archive on December 8, 2019. *Available at* https://web.archive.org/web/20191208063754/https://joybird.com/Privacy-policy/.


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

51. All three versions of the Privacy Policy expressly incorporate the Terms. Specifically, all three versions of the Privacy Policy state:

> "By accessing this Website, you acknowledge and agree to this Privacy Policy and also agree to the Terms of Use of the Website located at www.joybird.com/terms-of-use/ ('Terms of Use Agreement')."

52. Based on counsel's investigation, since at least March 17, 2017, there has been a link to the Terms in the footer of virtually every page of the website, including the homepage and product pages.

53. Based on counsel's investigation, since at least January 1, 2020, Joybird required any consumer who created an online customer account on the Joybird website to agree to Joybird's Privacy Policy. On the account creation webpage, Joybird stated, next to the "Continue" button to create an account: "By creating an account, you are agreeing to our Privacy Policy." The words "Privacy Policy" were in blue and hyperlinked to the Privacy Policy at https://joybird.com/Privacy-policy/. For example, see the screenshot attached as **Exhibit G** (captured by counsel on April 18, 2026). Given that the Privacy Policy expressly incorporated the Terms, any consumer who created an online customer account on the Joybird website—including all three Plaintiffs—agreed to Joybird's Terms.

54. Based on counsel's investigation, since at least January 1, 2020, even if a consumer on the Joybird website went through the entire online checkout process as a "guest" (and did not sign up for an online account), Joybird required the consumer to provide his or her email address, and immediately below that Joybird preselected a checkbox next to the following text: "Receive email updates from Joybird (including launch announcements, product info, and design inspiration). You can unsubscribe anytime. By signing up, you agree to our Privacy Policy." The words "Privacy Policy" were in blue and hyperlinked to the Privacy Policy at https://joybird.com/Privacy-policy/. The consumer was required



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

to click the "Continue to Shipping" button adjacent to the text in order to continue through the online checkout process, thereby manifesting his or her assent to the Privacy Policy and Terms. For example, see the screenshot attached as **Exhibit H** (captured by counsel on April 18, 2026).

55. Based on counsel's investigation, since at least January 1, 2020, Joybird has included a link to the Terms in the order confirmation email that consumers received after placing an order on the Joybird website.

56. Based on counsel's investigation, since at least January 1, 2020, when a consumer initiated an online chat with Joybird sales or customer service, the consumer was required to agree to the Privacy Policy (and thus also the Terms) by clicking an "Acknowledge" button before being able to send or receive any messages in the chat.

57. Based on information and belief, nearly every consumer who purchased a product on the Joybird website since January 1, 2020 agreed to the Privacy Policy (and thus also the Terms) by signing up for an online account, by going through the guest checkout process, and/or by initiating an online chat with Joybird sales or customer service. In addition, every customer was put on inquiry notice of the Terms via the link to the Terms in the website footer and via the link to the Terms in the order confirmation email.

58. Plaintiff Shaley German agreed to the Terms when she created an online account on the Joybird website on May 26, 2024, the day she made the online purchase of the Holt Sectional with Storage which is the subject of her claims. Per the first sentence of the Terms, Ms. German reaffirmed her acceptance of the Terms on April 15, 2026 by accessing the Joybird website and logging into her existing online account.

59. Plaintiff Shannon Solander agreed to the Terms when she created an online account on the Joybird website on September 12, 2025, the day she made the online purchase of the Briar Sofa and the Briar Storage Ottoman which is the


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

subject of her claims. Per the first sentence of the Terms, Ms. Solander reaffirmed her acceptance of the Terms on April 15, 2026 by accessing the Joybird website and logging into her existing online account.

60. Plaintiff Brian Stere agreed to the Terms when he created an online account on the Joybird website on March 27, 2025, the day he made the online purchase of the Soto Concave Arm Chair which is the subject of his claims. Per the first sentence of the Terms, Mr. Stere reaffirmed his acceptance of the Terms on April 15, 2026 by accessing the Joybird website and logging into his existing online account.

61. Meanwhile, Joybird's principal place of business is in California. Joybird has "corporate headquarters in Los Angeles" and "warehouse distribution in San Diego."[7] Joybird makes decisions about its marketing strategies for its website and retail stores from its headquarters in California. Joybird creates and approves of all its advertising from its headquarters in California. The alleged fraudulent misconduct of Joybird that forms the basis of Plaintiffs' and Class members' claims emanates from California.

62. "California's consumer protection laws are among the strongest in the country," and as such, even without an agreed-to California choice of law clause, a California court may apply California consumer protection laws to non-California Class members "where the defendant is a California corporation and some or all of the challenged conduct emanates from California." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 242-43 (2001). Moreover, California's False Advertising Law (FAL) expressly states that it applies to false or misleading statements "disseminated from [California] before the public in any state." Cal. Bus. & Prof. Code § 17500.

---

[7] *See* https://joybird.com/the-factory.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

## VII. JOYBIRD'S FALSE DISCOUNT ADVERTISING SCHEME HARMS CONSUMERS AND VIOLATES CALIFORNIA LAW

63. Joybird perpetrates this false discount advertising scheme because it works—lying about discounts increases demand and increases Joybird's revenues and profits.

64. Indeed, decades of academic research has established that the use of reference prices and discount advertising like that utilized by Joybird materially impacts consumers' behavior and induces them to purchase the "discounted" products. A reference price (e.g., the strikethrough price advertised by Joybird from which the advertised discounts and savings are calculated) affects a consumer's perception of the value of the transaction, the consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.[8]

---

[8] *See, e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826 (2023); Mark Armstrong & Yongmin Chen, *Discount Pricing*, 58 Econ. Inquiry 1614 (2020); Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices: The Moderating Role of Involvement*, 79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing 512 (2012); Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review,* 17 J. Pub. Pol'y & Mktg. 257 (1998); Larry D. Compeau, Dhruv Grewal & Rajesh Chandrashekaran, *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002); David Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921 (2016); Dhruv Grewal & Larry D. Compeau, *Consumer Responses to Price and its Contextual Information Cues: A Synthesis of Past Research, a Conceptual Framework, and Avenues for Further Research*, in 3 Rev. of Mktg. Res. 109 (Naresh K. Malhotra ed., 2007); Daniel J. Howard & Roger A. Kerin, *Broadening the Scope of Reference Price Advertising Research: A Field Study of Consumer Shopping Involvement*, 70 J. Mktg. 185 (2006); Aradhna Krishna, Richard Briesch, Donald R. Lehmann & Hong Yuan, *A Meta-Analysis of the Impact of Price Presentation on Perceived Savings*, 78 J. Retailing 101 (2002); Balaji C. Krishnan, Sujay Dutta & Subhash Jha, *Effectiveness of Exaggerated Advertised Reference Prices: The Role of Decision Time Pressure*, 89 J. Retailing 105 (2013); Gorkan Ahmetoglu, Adrian Furnham, & Patrick Fagan, *Pricing Practices: A Critical Review of their Effects on Consumer Perceptions and*



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

65. When a reference price and corresponding discount is bona fide and truthful, it may help consumers in making informed purchasing decisions. In contrast, consumers are harmed when retailers, such as Joybird, advertise their products with inflated false reference prices. The false reference prices deceive consumers, deprive consumers of a fair opportunity to accurately evaluate the offer, and result in purchasing decisions based on false pretenses.

66. As a direct and proximate result of Joybird's false reference prices and false discounts, Plaintiffs and Class members were harmed and lost money or property.

67. First, Plaintiffs and Class members were harmed because they would not have purchased the products at the prices they paid had they known that the discounts were fake and that the products had not in fact been regularly offered at the higher reference price. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("[W]hen a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under the UCL and FAL because he has suffered an economic injury.").

68. Consumers who are presented with discounts are substantially more likely to make the purchase. "Nearly all consumers (94%) search for a deal or offer when shopping online," "81% of [consumers] say finding a great offer or discount is on their mind throughout the entire purchase journey," and "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount." RetailMeNot Survey: Deals and

---

*Behavior*, 21 J. of Retailing & Consumer Servs. 696 (2014); Bruce L. Alford & Abhijit Biswas, *The Effects of Discount Level, Price Consciousness and Sale Proneness on Consumers' Price Perception and Behavioral Intention*, 55 J. Bus. Res. 775 (2002); and Tridib Mazumdar, S. P. Raj & Indrahit Sinha, *Reference Price Research: Review and Propositions*, 69 J. Mktg. 84 (2005).



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

69. Additionally, Joybird's advertised limited-time sales created a false sense of urgency, which made consumers more likely to make a purchase. Studies and articles have documented how limited-time sales induce customers to purchase products. For example, a study regarding the effect of time-limited advertisement concluded that "[t]he willingness to buy was significantly higher" and "the attitude towards the deal was more favourable."[9]

70. Second, Plaintiffs and Class members were harmed because they did not receive the benefits of their bargains. Plaintiffs and Class members did not enjoy the actual discounts Joybird represented and promised to them. Plaintiffs and Class members did not receive products that were worth the inflated amount that Joybird represented to them; the products did not regularly sell for, and did not have a market value of, the fictitious reference price advertised by Joybird. In fact, for every single product that Joybird advertises with a discount, Joybird has never or almost never offered the product at the reference price without a discount—and never in good faith.

71. Joybird's false discount advertising scheme is for all intents and purposes identical to that which the FTC Pricing Guides describe as false and misleading. *See* 16 C.F.R § 233.1 "Former Price Comparisons." On information and belief, on those rare occasions that Joybird offers its products at the reference price, it does so in bad faith, solely for the purpose of "establishing" its reference price to attempt to exculpate itself from legal liability for its illegal false discount advertising scheme. It is Joybird's intent to sell few if any products at reference price, and in fact Joybird sells few if any products at reference price.

---

[9] Aggarwal, P., *Use it or lose it: Purchase acceleration effects of time-limited promotions*, Journal of Consumer Behaviour (September 17, 2002) at 399–401.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

72. Third, Plaintiffs and Class members were harmed because they paid a price premium due to illegitimately inflated demand resulting from Joybird's deceptive pricing scheme. Joybird's false discount advertising scheme artificially increased consumer demand for Joybird's products, which shifted the demand curve and allowed Joybird to charge more for its products than it otherwise could have charged (i.e., a price premium) absent the misrepresentations.

73. Joybird's false discount advertising scheme enabled Joybird to charge everyone more for all its products by artificially stimulating demand based on false pretenses. *See*, *e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826, 836 (2023) (observing that "numerous empirical studies on the effects of promotions" have shown that promotions cause an "outward shift" in the demand curve (i.e., a price premium), which can be "substantial"). Without the misrepresentations, Joybird would have had to charge less for its products in order to enjoy the same level of demand.

74. In addition to harming consumers, the practice of employing false reference prices and false discounts also negatively affects the integrity of competition in retail markets. A retailer's use of false reference prices and false discounts constitutes an unfair method of competition and harms honest competitors that sell the same or similar products, or otherwise compete in the same market, using valid and accurate reference prices and true "sales." Businesses who play by the rules—and the investors in those businesses—are penalized if the unlawful advertising practices of their competitors go unchecked.

75. Federal and state courts have articulated the abuses that flow from false discount advertising practices like those perpetrated by Joybird. For example, the Ninth Circuit explained: "Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

76. The California Court of Appeal has likewise recognized the importance of California's false discount advertising statutes in protecting consumers: "Our Legislature has adopted multiple statutes that specifically prohibit the use of deceptive former price information and misleading statements regarding the amount of a price reduction. … These statutes make clear that … our Legislature has concluded 'reasonable people can and do attach importance to [a product's reference price] in their purchasing decisions.'" *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 730 (2018) (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 333 (2011)).

77. California law prohibits false discount advertising practices such as those perpetrated by Joybird.

78. California's Consumers Legal Remedies Act (CLRA) prohibits "advertising goods or services with the intent not to sell them as advertised," and specifically prohibits "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Cal. Civ. Code § 1770(a)(9), (13).

79. California's False Advertising Law (FAL) prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely indicating that a product is on sale, when it actually is not. Moreover, the FAL specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding [the advertisement] or unless the date when the alleged



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

former price did prevail is clearly, exactly and conspicuously stated in the advertisement." Cal. Bus. & Prof. Code § 17501.

80. Finally, California's Unfair Competition Law broadly bans all unlawful, unfair, and deceptive business practices. Cal. Bus. & Prof. Code § 17200.

81. In addition, the Federal Trade Commission's ("FTC") regulations prohibit false or misleading "former price comparisons." 16 C.F.R § 233.1. For example, an advertised former price is false when it is "an artificial, inflated price [that] was established for the purpose of enabling the subsequent offer of a large reduction—the 'bargain' being advertised is a false one; the purchaser is not receiving the unusual value he expects." 16 C.F.R § 233.1(a).

82. A UCL claim may also be predicated on a violation of this FTC regulation under the UCL's "unlawful" prong. *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017).

83. As alleged in detail above, Joybird's advertised reference prices and discounts violate California law because, based on the investigation of Plaintiffs' counsel, Joybird's advertised reference prices are inflated and fictitious, and Joybird's advertised percentage-off and dollars-off discounts are false. Joybird advertises perpetual discounts for its products and never or almost never offers its products at their advertised reference price.

84. Additionally, because Joybird advertises perpetual discounts of between 30% to 50% off, its advertised former prices were not the prevailing market price in the three months immediately preceding the advertisement. *See* Cal. Bus. & Prof. Code § 17500. This is true because virtually all the products sold by Joybird are exclusive to Joybird and are not available anywhere else (i.e., Joybird ***is*** the market). *People v. Superior Ct. (J.C. Penney Corp.)*, 34 Cal. App. 5th 376, 409 (2019).


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

85. Because Joybird's advertised former prices are almost always significantly higher than its actual former prices for the products, those advertised former prices were not the prevailing market prices during the requisite three-month period. *See id.* at 417.

86. The false reference price and false discount representations by Joybird were material to the decisions of consumers to purchase each product. Because of the false reference price and false discount representations, consumers reasonably believed they would be receiving significant savings if they purchased these products, and consumers purchased these products on the basis of these representations in order to enjoy the purported discounts.

87. Joybird's false discount advertising is so pervasive across all its products and all its advertising that it is apparent that the heart of Joybird's marketing plan is to deceive the public.

88. Joybird's intent is to deceive consumers into believing that its products are worth, and have a market value equal to, the inflated reference price (the strikethrough reference price), and that the lower advertised actual price represents a special bargain.

89. The false or misleading nature of Joybird's reference prices and discounts was, at all relevant times, masked or concealed such that an ordinary consumer exercising reasonable care under all circumstances would not have known or discovered their false or misleading nature.

90. As a direct and proximate result of Joybird's acts and omissions, all Class members who purchased a product from Joybird that was advertised with a reference price or purported discount were harmed and lost money or property.

91. Joybird continues to advertise false reference prices, false discounts, and false limited-time savings to this day. There is no reason to believe that Joybird will voluntarily and permanently cease its unlawful practices. Moreover,



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

in the unlikely event that Joybird were to cease its unlawful practices, Joybird can and is likely to recommence these unlawful practices.

92. In acting toward consumers and the general public in the manner alleged herein, Joybird acted with and was guilty of malice, fraud, and oppression and acted in a manner with a strong and negative impact upon Plaintiffs, Class members, and the public.

## VIII. PLAINTIFF SHALEY GERMAN'S PURCHASE

93. Plaintiff Shaley German is, and at all relevant times has been, a citizen and resident of the city of Littleton, in Arapahoe County, Colorado.

94. Ms. German is a victim of Joybird's false discount advertising scheme.

95. As detailed above, Joybird's false discounting practices have been ongoing since at least 2021. During this time, Ms. German purchased a product from Joybird's website that was advertised with a false reference price and a false discount.

96. On May 26, 2024, Ms. German visited the Joybird website to shop for furniture. While browsing the Joybird website, Ms. German viewed pricing and discount representations similar to those described and presented in detail above. All of the products that she viewed were advertised as being discounted from a reference price. Every item that Ms. German viewed had a strikethrough reference price alongside a lower offer price. Joybird also advertised on the webpages that every item was at a specified dollars-off and percentage-off savings.

97. The products Ms. German viewed on the Joybird website included the Holt Sectional with Storage (the "Sectional"). Ms. German viewed representations that the Sectional was on sale for $2,672, 45% off from a much higher regular price of $4,859, which was represented as a strikethrough reference price.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

98. Based on Joybird's representations, Ms. German believed she needed to act fast and purchase the Sectional now to take advantage of the special sale before the Sectional returned to its normal full price.

99. Ms. German then proceeded through the online checkout process. In the online shopping cart and during the checkout process, Ms. German viewed additional representations that the Sectional was on sale for $2,672 from a much higher strikethrough reference price of $4,859.

100. Relying on these representations of receiving a special and significant discount for the Sectional, Ms. German completed the checkout process and purchased the Sectional.

101. Relying on Joybird's representations, Ms. German reasonably believed that the Sectional was normally offered and sold by Joybird on its website at the higher advertised strikethrough reference price of $4,859. Ms. German reasonably believed that the Sectional was worth, and had a value of, the higher stated reference price of $4,859. Ms. German reasonably believed that the advertised "sale" price of $2,672 represented a special bargain, where Joybird was temporarily offering the Sectional at a significant discount from the regular and normal selling price.

102. However, Joybird's representations and advertised discounts were false and deceptive. In reality, and unbeknownst to Ms. German, based on counsel's investigation, Joybird had never previously offered the Sectional at its advertised regular price.

103. Since counsel began tracking the Sectional on December 15, 2024 through October 6, 2025 via counsel's automated daily web scraping software, Joybird never offered the Sectional at the advertised reference price. Instead, during this time, Joybird consistently offered the Sectional at prices between $2,529 and $3,449 from strikethrough reference prices of between $4,599 and $5,059. Given these facts, and given counsel's comprehensive investigation


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

which documented and confirmed Joybird's false discount advertising scheme over multiple years (as described in this Complaint), it is reasonable to infer for pleading purposes—and will be proven at trial after discovery—that Joybird likewise never offered the Sectional at the $4,859 reference price at any time prior to Ms. German's purchase on May 26, 2024. And notably, counsel's investigation using the Wayback Machine found, in the screenshots that counsel located which displayed the Sectional, that in the months surrounding Ms. German's purchase on May 26, 2024 the Sectional was never sold at its advertised regular price of $4,859 and was always advertised with a significant discount.

104. The $4,859 reference price advertised by Joybird to Ms. German was not Joybird's regular offering price for the Sectional and did not reflect the market value of the Sectional. Ms. German did not receive the advertised and promised savings from the true regular price of the Sectional.

105. Joybird's advertised reference price and discount for the Sectional were material misrepresentations and inducements to Ms. German's purchase.

106. Ms. German reasonably relied on Joybird's material misrepresentations. If Ms. German had known the truth, she would not have purchased the Sectional at the price she paid.

107. When Ms. German shopped at Joybird, she had no suspicion that Joybird's advertised reference prices and discounts were false. Joybird gave Ms. German no reason to be suspicious. Ms. German first learned of Joybird's false discount advertising scheme in February 2026 when her attorneys told her about Joybird's unlawful conduct and informed her that she was a victim of the scheme. Prior to this, Ms. German did not know or suspect that Joybird was engaging in a false discount advertising scheme or that she had been a victim of the scheme.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

108. Ms. German has a legal right to rely now, and in the future, on the truthfulness and accuracy of Joybird's representations regarding the advertised reference prices and discounts for its products.

109. Ms. German faces an imminent threat of future harm. Ms. German would purchase from Joybird's website again in the future if she could have confidence regarding the truth about Joybird's price and discount representations. But without an injunction, Ms. German has no realistic way of knowing which, if any, of Joybird's reference prices, discounts, and sales are true.

110. Ms. German will be harmed if, in the future, she is left to guess as to whether Joybird is providing a legitimate sale or not, and whether its products are actually worth the amount that Joybird is representing.

111. If Ms. German were to purchase again from Joybird without Joybird having changed its unlawful and deceptive conduct alleged herein, Ms. German would be harmed on an ongoing basis and/or would be harmed once or more in the future.

112. The deceptive practices and policies alleged herein, and experienced directly by Ms. German, are not limited to any single product or group of products. Rather, Joybird's deceptive discount advertising practices were, and continue to be, systematic and pervasive across all of Joybird's products.

113. On the day that Ms. German purchased the Sectional (May 26, 2025), she created an online account on the Joybird website. In doing so, Ms. German agreed to the Joybird Terms of Use. On April 15, 2026, Ms. German reaffirmed her acceptance of the Terms by accessing the Joybird website and logging into her existing online account.

## IX. PLAINTIFF SHANNON SOLANDER'S PURCHASE

114. Plaintiff Shannon Solander is, and at all relevant times has been, a citizen and resident of the city of Brooklyn, in Kings County, New York.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

115. Ms. Solander is a victim of Joybird's false discount advertising scheme.

116. As detailed above, Joybird's false discounting practices have been ongoing since at least 2021. During this time, Ms. Solander purchased products from Joybird's website that were advertised with a false reference price and a false discount.

117. On September 12, 2025, Ms. Solander visited the Joybird website to shop for furniture. While browsing the Joybird website, Ms. Solander viewed pricing and discount representations similar to those described and presented in detail above. All of the products that she viewed were advertised as being discounted from a reference price. Every item that Ms. Solander viewed had a strikethrough reference alongside a lower offer price. Joybird also advertised on the webpages that every item was at a specified dollars-off and percentage-off savings.

118. The products Ms. Solander viewed on the Joybird website included the Briar Sofa (the "Sofa") and the Briar Storage Ottoman (the "Ottoman"). Ms. Solander viewed representations that the Sofa was on sale for $1,868 from a much higher regular price of $2,668, which was represented as a strikethrough reference price. Ms. Solander also viewed representations that the Ottoman was on sale for $802 from a much higher regular price of $1,069, which was represented as a strikethrough reference price.

119. Based on Joybird's representations, Ms. Solander believed she needed to act fast and purchase the Sofa and Ottoman now to take advantage of the special sales before the Sofa and Ottoman returned to their normal full prices.

120. Ms. Solander then proceeded through the online checkout process. In the online shopping cart and during the checkout process, Ms. Solander viewed additional representations that the Sofa was on sale for $1,868 from a much



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

higher strikethrough reference price of $2,668 and that the Ottoman was on sale for $802 from a much higher strikethrough reference price of $1,069.

121. Relying on these representations of receiving a special and significant discount for the Sofa and Ottoman, Ms. Solander completed the checkout process and purchased the Sofa and Ottoman.

122. Relying on Joybird's representations, Ms. Solander reasonably believed that the Sofa and Ottoman were normally offered and sold by Joybird on its website at the higher advertised strikethrough reference prices of $2,668 and $1,069, respectively. Ms. Solander reasonably believed that the Sofa and Ottoman were worth, and had values of, the higher stated reference prices of $2,668 and $1,069, respectively. Ms. Solander reasonably believed that the advertised "sale" prices of $1,868 and $802 represented a special bargain, where Joybird was temporarily offering the Sofa and Ottoman at significant discounts from the regular and normal selling prices.

123. However, Joybird's representations and advertised discounts were false and deceptive. In reality, and unbeknownst to Ms. Solander, according to daily pricing data collected by Plaintiffs' counsel, Joybird had never—not even for a single day—offered the Sofa at its advertised regular price since counsel began tracking the Sofa on December 15, 2024 through the date of Ms. Solander's purchase on September 12, 2025. During this time, Joybird consistently offered the Sofa at prices between $1,327 and $1,809, "discounted" from strikethrough reference prices of between $2,413 and $2,584.

124. Similarly, according to pricing data collected by Plaintiffs' counsel, Joybird had never—not even for a single day—offered the Ottoman at its advertised regular price since counsel began tracking the Ottoman on January 31, 2025 through the date of Ms. Solander's purchase on September 12, 2025. Instead, during this time, Joybird consistently offered the Ottoman at prices



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

between $427 and $739, "discounted" from strikethrough reference prices of between $983 and $1,068.

125. The advertised reference prices were not Joybird's regular offering prices for the Sofa and Ottoman and did not reflect the market values of the Sofa and Ottoman. Ms. Solander did not receive the advertised and promised savings from the true regular prices of the Sofa and Ottoman.

126. Joybird's advertised reference prices and discounts for the Sofa and Ottoman were material misrepresentations and inducements to Ms. Solander's purchase.

127. Ms. Solander reasonably relied on Joybird's material misrepresentations. If Ms. Solander had known the truth, she would not have purchased the Sofa and Ottoman at the prices she paid.

128. As a direct and proximate result of Joybird's acts and omissions, Ms. Solander was harmed, suffered an injury-in-fact, and lost money or property.

129. When Ms. Solander shopped at Joybird, she had no suspicion that Joybird's advertised reference prices and discounts were false. Joybird gave Ms. Solander no reason to be suspicious. Ms. Solander first learned of Joybird's false discount advertising scheme in February 2026 when her attorneys told her about Joybird's unlawful conduct and informed her that she was a victim of the scheme. Prior to this, Ms. Solander did not know or suspect that Joybird was engaging in a false discount advertising scheme or that she had been a victim of the scheme.

130. Ms. Solander has a legal right to rely now, and in the future, on the truthfulness and accuracy of Joybird's representations regarding the advertised reference prices and discounts for its products.

131. Ms. Solander faces an imminent threat of future harm. Ms. Solander would purchase from Joybird's website again in the future if she could have confidence regarding the truth about Joybird's price and discount representations.

But without an injunction, Ms. Solander has no realistic way of knowing which, if any, of Joybird's reference prices, discounts, and sales are true.

132. Ms. Solander will be harmed if, in the future, she is left to guess as to whether Joybird is providing a legitimate sale or not, and whether its products are actually worth the amount that Joybird is representing.

133. If Ms. Solander were to purchase again from Joybird without Joybird having changed its unlawful and deceptive conduct alleged herein, Ms. Solander would be harmed on an ongoing basis and/or would be harmed once or more in the future.

134. The deceptive practices and policies alleged herein, and experienced directly by Ms. Solander, are not limited to any single product or group of products. Rather, Joybird's deceptive discount advertising practices were, and continue to be, systematic and pervasive across all of Joybird's products.

135. On the day that Ms. Solander purchased the Sofa and Ottoman (September 12, 2025), she created an online account on the Joybird website. In doing so, Ms. Solander agreed to the Joybird Terms of Use. On April 15, 2026, Ms. Solander reaffirmed her acceptance of the Terms by accessing the Joybird website and logging into her existing online account.

## X. <u>PLAINTIFF BRIAN STERE'S PURCHASE</u>

136. Plaintiff Brian Stere is, and at all relevant times has been, a citizen and resident of the city of Clermont, in Lake County, Florida.

137. Mr. Stere is a victim of Joybird's false discount advertising scheme.

138. As detailed above, Joybird's false discounting practices have been ongoing since at least 2021. During this time, Mr. Stere purchased at least one product from Joybird's website that was advertised with a false reference price and a false discount.

139. For example, on March 27, 2025, Mr. Stere visited the Joybird website to shop for furniture. While browsing the Joybird website, Mr. Stere



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

viewed pricing and discount representations similar to those described and presented in detail above. All of the products that he viewed were advertised as being discounted from a reference price. Every item that Mr. Stere viewed had a strikethrough reference alongside a lower offer price. Joybird also advertised on the webpages that every item was at a specified dollars-off and percentage-off savings.

140. The products Mr. Stere viewed on the Joybird website included the Soto Concave Arm Chair (the "Chair"). Mr. Stere viewed representations that the Chair was on sale for $590 from a much higher regular price of $984, which was represented as a strikethrough reference price.

141. Based on Joybird's representations, Mr. Stere believed he needed to act fast and purchase the Chair now to take advantage of the special sale before the Chair returned to its normal full price.

142. Mr. Stere then proceeded through the online checkout process. In the online shopping cart and during the checkout process, Mr. Stere viewed additional representations that the Chair was on sale for $590 from a much higher strikethrough reference price of $984.

143. Relying on these representations of receiving a special and significant discount for the Chair, Mr. Stere completed the checkout process and purchased the Chair.

144. Relying on Joybird's representations, Mr. Stere reasonably believed that the Chair was normally offered and sold by Joybird on its website at the higher advertised strikethrough reference price $984. Mr. Stere reasonably believed that the Chair was worth, and had the value of, the higher stated reference price of $984. Mr. Stere reasonably believed that the advertised "sale" price of $590 represented a special bargain, where Joybird was temporarily offering the Chair at a significant discount from the regular and normal selling price.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

145. However, Joybird's representations and advertised discounts were false and deceptive. In reality, and unbeknownst to Mr. Stere, according to daily pricing data collected by Plaintiffs' counsel, Joybird had never—not even for a single day—offered the Chair at its advertised regular price since counsel began tracking the Chair on December 15, 2024 through the date of Mr. Stere's purchase on March 27, 2025. Instead, during this time, Joybird sold the Chair at prices between $499 and $624, "discounted" from a strikethrough reference price of $832.

146. Moreover, after Mr. Stere's purchase, from March 27, 2025 through September 22, 2025, Joybird never sold—not even for a single day—the Chair at its advertised regular price and instead sold it at prices between $496 and $680, "discounted" from strikethrough reference prices between $827 and $907.

147. The reference price of $984 which Joybird advertised to Mr. Stere was not Joybird's regular offering price for the Chair and did not reflect the market value of the Chair. Mr. Stere did not receive the advertised and promised savings from the true regular price of the Chair.

148. Joybird's advertised reference price and discount for the Chair were material misrepresentations and inducements to Mr. Stere's purchase.

149. Mr. Stere reasonably relied on Joybird's material misrepresentations. If Mr. Stere had known the truth, he would not have purchased the Chair at the price he paid.

150. As a direct and proximate result of Joybird's acts and omissions, Mr. Stere was harmed, suffered an injury-in-fact, and lost money or property.

151. When Mr. Stere shopped at Joybird, he had no suspicion that Joybird's advertised reference prices and discounts were false. Joybird gave Mr. Stere no reason to be suspicious. Mr. Stere first learned of Joybird's false discount advertising scheme in February 2026 when his attorneys told him about Joybird's unlawful conduct and informed him that he was a victim of the scheme.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

Prior to this, Mr. Stere did not know or suspect that Joybird was engaging in a false discount advertising scheme or that he had been a victim of the scheme.

152. Mr. Stere has a legal right to rely now, and in the future, on the truthfulness and accuracy of Joybird's representations regarding the advertised reference prices and discounts for its products.

153. Mr. Stere faces an imminent threat of future harm. Mr. Stere would purchase from Joybird's website again in the future if he could have confidence regarding the truth about Joybird's price and discount representations. But without an injunction, Mr. Stere has no realistic way of knowing which, if any, of Joybird's reference prices, discounts, and sales are true.

154. Mr. Stere will be harmed if, in the future, he is left to guess as to whether Joybird is providing a legitimate sale or not, and whether its products are actually worth the amount that Joybird is representing.

155. If Mr. Stere were to purchase again from Joybird without Joybird having changed its unlawful and deceptive conduct alleged herein, Mr. Stere would be harmed on an ongoing basis and/or would be harmed once or more in the future.

156. The deceptive practices and policies alleged herein, and experienced directly by Mr. Stere, are not limited to any single product or group of products. Rather, Joybird's deceptive discount advertising practices were, and continue to be, systematic and pervasive across all of Joybird's products.

157. On the day that Mr. Stere purchased the Chair (March 27, 2025), he created an online account on the Joybird website. In doing so, Mr. Stere agreed to the Joybird Terms of Use. On April 15, 2026, Mr. Stere reaffirmed his acceptance of the Terms by accessing the Joybird website and logging into his existing online account.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

## XI. CLASS ALLEGATIONS

158. Plaintiffs bring this class action lawsuit under California law on behalf of themselves and the members of the following class (the "Class"):

> **All persons who, while anywhere in the United States other than California, Oregon, and Washington, purchased one or more products advertised at a discount from the Joybird website, www.joybird.com, during the applicable limitations period.**

159. Specifically excluded from the Class are Joybird and any entities in which Joybird has a controlling interest, Joybird's agents and employees, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

160. **Application of the Discovery Rule.** This Court should apply the discovery rule to extend any applicable limitations period and corresponding class period to the date on which Joybird first engaged in its unlawful false discounting practices. Based on counsel's investigation, Joybird's false discount advertising practices have been ongoing since at least 2021 and likely began much earlier. However, without discovery, Plaintiffs cannot determine the earliest date Joybird first began advertising false discounts for its products.

161. The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *E-Fab, Inc. v. Accts., Inc. Servs.*, 153 Cal. App. 4th 1308, 1318 (2007). Plaintiffs and the members of the Class did not know, and could not have reasonably known, about Joybird's unlawful conduct.

162. When Plaintiffs shopped on the Joybird website, they had no suspicion that Joybird's advertised reference prices and discounts were false. Joybird gave Plaintiffs no reason to be suspicious. Plaintiffs first learned of Joybird's false discount advertising scheme in February 2026 when their attorneys told them about Joybird's unlawful conduct and informed them that



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

they were victims of the scheme. Prior to this, Plaintiffs did not know or suspect—and had no reason to suspect—that Joybird was engaging in a false discount advertising scheme or that they had been victims of the scheme. *See Esgate v. Home Depot U.S.A., Inc.*, No. 6:24-CV-01806-MTK, 2025 WL 1207217, at *7–*8 (D. Or. Apr. 24, 2025) (holding that the Plaintiff's claims did not begin to accrue under the discovery rule until the date his lawyers informed him that he was likely a victim of the defendant's false discount advertising scheme).

163. Likewise, Class members would not have known or suspected that Joybird was engaging in this deceptive pricing scheme. Reasonable consumers presume that retailers are not engaging in unlawful conduct. Reasonable consumers would have believed that Joybird's pricing and discount representations were true.

164. Reasonable consumers would have believed that Joybird's strikethrough reference prices: (1) represented Joybird's regular and normal prices that consumers had to pay for the products; (2) represented Joybird's recent former prices for the products (that is, the prices at which the products were regularly offered for sale); and (3) represented Joybird's prices that consumers would have to pay for the products when the sale ended.

165. Reasonable consumers would have believed that Joybird's advertised discounts represented a reduction from the regular and recent former prices of the products in the amounts advertised.

166. Moreover, Plaintiffs and the Class could not have, with the exercise of reasonable diligence, discovered Joybird's false discount advertising scheme because, by design, its very nature is hidden and impossible for a reasonable consumer to discover—especially regarding products that are purchased infrequently such as furniture.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

167. "The only way for a person to know that [a retailer's] advertised discounts were false is for the person to know [the retailer's] true historical selling prices for the products he or she purchased." *Clark v. Eddie Bauer LLC*, No. 2:20-CV-01106-RAJ, 2025 WL 814924, at *3 (W.D. Wash. Mar. 12, 2025). Consumers who shopped at Joybird would have had no way to know, with the exercise of reasonable diligence, the true daily price histories and past selling prices for the products they viewed and purchased. Consumers would have had no way to know, with the exercise of reasonable diligence, that Joybird's regular prices (i.e., the advertised strikethrough reference prices) were fictitious and inflated and that the advertised percentage-off and dollars-off savings were false.

168. Plaintiffs' counsel only found evidence for Joybird's deceptive pricing scheme by conducting an extensive investigation that no reasonable person would conduct.

169. **Numerosity.** The number of members of the Class are so numerous that joinder of all members would be impracticable. Plaintiffs do not know the exact number of Class members prior to discovery. However, based on information and belief, the Class comprises tens of thousands of individuals. The exact number and identities of Class members are contained in Joybird's records and can be easily ascertained from those records.

170. **Commonality and Predominance.** This action involves multiple common legal or factual questions which are capable of generating classwide answers that will drive the resolution of this case. These common questions predominate over any questions affecting individual Class members, if any. These common questions include, but are not limited to, the following:

a. Whether California law applies to the claims of Plaintiffs and Class members;

b. Whether the alleged conduct of Joybird violates the California Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*;



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

c. Whether the alleged conduct of Joybird violates the California False Advertising Law, California Business & Professions Code § 17500 *et seq.*;

d. Whether the alleged conduct of Joybird violates the California Unfair Competition Law, California Business & Professions Code § 17200 *et seq.*;

e. Whether the alleged conduct of Joybird violates 16 C.F.R § 233.1 *et seq.*;

f. Whether Plaintiffs and the Class have suffered injury and have lost money or property as a result of Joybird's unlawful conduct; and

g. Whether Joybird should be enjoined from engaging in the unlawful conduct alleged herein.

171. **Typicality.** Plaintiffs' claims are typical of Class members' claims. Plaintiffs and Class members all sustained injury as a direct result of Joybird's standard practices and schemes, bring the same claims, and face the same potential defenses.

172. **Adequacy.** Plaintiffs and their counsel will fairly and adequately protect Class members' interests. Plaintiffs have no interests antagonistic to Class members' interests and are committed to representing the best interests of the Class members. Moreover, Plaintiffs have retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

173. **Superiority.** A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for Joybird's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiffs do not anticipate any difficulties in managing a class action trial.

174. By its conduct and omissions alleged herein, Joybird has acted and refused to act on grounds that apply generally to the Class members, such that declaratory relief is appropriate respecting the Class as a whole.

175. Joybird is primarily engaged in the business of selling goods. Each cause of action brought by Plaintiffs against Joybird in this Complaint arises from and is limited to statements or conduct by Joybird that consist of representations of fact about Joybird's business operations or goods that are or were made for the purpose of obtaining approval for, promoting, or securing sales of or commercial transactions in, Joybird's goods; or the statements are or were made in the course of delivering Joybird's goods. Each cause of action brought by Plaintiffs against Joybird in this Complaint arises from and is limited to statements or conduct by Joybird for which the intended audience is an actual or potential customer, or a person likely to repeat the statements to, or otherwise influence, an actual or potential customer.

## CAUSES OF ACTION

## COUNT I

**Violation of the Consumers Legal Remedies Act ("CLRA")**

**California Civil Code § 1750 *et seq*.**

176. Plaintiffs reallege and incorporate by reference all paragraphs previously alleged herein.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

177. Plaintiffs bring this claim in their individual capacities, in their capacities as private attorneys general seeking the imposition of public injunctive relief to protect the general public, and as representatives of the Class.

178. Joybird's products are "goods" as defined by California Civil Code § 1761(a).

179. Joybird is a "person," as defined by Cal. Civ. Code § 1761(c).

180. Plaintiffs and Class members are each "consumers," as defined by Cal. Civ. Code §1761(d).

181. Plaintiffs and Class members purchased Joybird's products for personal, family, and/or household purposes, as meant by Cal. Civ. Code § 1761(d).

182. Plaintiffs' and Class members' purchases from Joybird each constitutes a "transaction," as defined by Cal. Civ. Code § 1761(e).

183. Venue is proper under Cal. Civil Code § 1780(d) because a substantial portion of the transactions at issue occurred in Los Angeles County and Joybird is headquartered in Los Angeles County. Furthermore, the Terms of Use on the Joybird website specify that Joybird and its customers "consent to the exclusive jurisdiction and venue of courts in the County of Los Angeles, California, U.S.A., for all disputes." Plaintiffs' declarations establishing that this Court is a proper venue for this action are attached hereto as **Exhibit A.**

184. The unlawful methods, acts or practices alleged herein to have been undertaken by Joybird were all committed intentionally and knowingly. The unlawful methods, acts or practices alleged herein to have been undertaken by Joybird did not result from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid such error.

185. Joybird's conduct alleged herein has violated the CLRA in multiple respects, including, but not limited to, the following:



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

a. Joybird represented that its products had characteristics that they did not have (Cal. Civ. Code § 1770(a)(5));

b. Joybird advertised its products with an intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

c. Joybird made false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions (Cal. Civ. Code § 1770(a)(13)); and

d. Joybird misrepresented that its products were supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16)).

186. With respect to any omissions, Joybird at all relevant times had a duty to disclose the information in question because, inter alia: (a) Joybird had exclusive knowledge of material information that was not known to Plaintiffs and Class members; (b) Joybird concealed material information from Plaintiffs and Class members; and (c) Joybird made partial representations which were false and misleading absent the omitted information.

187. Joybird intentionally deceived Plaintiffs and the Class, and continues to deceive the public, by advertising false discounts and false reference prices.

188. Joybird's misrepresentations deceive and have a tendency to deceive the reasonable consumer and the general public.

189. Joybird's misrepresentations are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

190. As a direct, substantial, and/or proximate result of Joybird's unlawful conduct, Plaintiffs and Class members were harmed, suffered injury-in-fact, and lost money or property.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

191. Plaintiffs and Class members reasonably relied on Joybird's material misrepresentations, and would not have purchased Joybird's products at the prices that they paid had they known the truth.

192. Additionally, Joybird's advertised limited-time discounts for its products were false and induced customers to purchase the products immediately before they supposedly returned to the (fictitious) reference price.

193. Plaintiffs and Class members did not receive the benefits of their bargains. Plaintiffs and Class members did not enjoy the actual discounts that Joybird represented and promised to them. Plaintiffs and Class members did not receive products that were worth the inflated amount that Joybird represented to them; the products did not regularly sell for, and were not actually worth, the fictitious strikethrough reference price advertised by Joybird.

194. By its conduct and omissions alleged herein, Joybird caused the demand for its products to be artificially increased and caused all customers, including Plaintiffs and Class members, to pay price premiums to Joybird. Put differently, as a result of its misrepresentations, Joybird has been able to charge a price premium for its products that it would not be able to charge absent the misrepresentations. Without the misrepresentations, Joybird would have had to charge less for its products in order to enjoy the same level of demand.

195. **Permanent public injunctive relief.** Plaintiffs, acting as private attorneys general, seek public injunctive relief under the CLRA to protect the general public from Joybird's false advertisements, misrepresentations, and omissions.

196. Joybird's misconduct, which affects and harms the general public, is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Joybird absent a permanent public injunction. Accordingly, Plaintiffs seek an order enjoining Joybird from committing the unlawful practices alleged herein.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

197. The balance of the equities favors the entry of permanent public injunctive relief against Joybird. Plaintiffs, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from Joybird's ongoing false advertising absent the entry of permanent public injunctive relief against Joybird.

198. Plaintiffs lack an adequate remedy at law to prevent Joybird from engaging in the unlawful practices alleged herein. Plaintiffs would purchase products from Joybird again if they could have confidence regarding the truth of Joybird's prices and the value of its products. Plaintiffs will be harmed if, in the future, they are left to guess as to whether Joybird is providing a legitimate sale or not, and whether Joybird's products are actually worth the amount that Joybird is representing.

199. Monetary damages are not an adequate remedy at law for <u>future</u> harm. *Clark v. Eddie Bauer LLC*, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: First, damages will not prevent Joybird from engaging in its unlawful conduct. Second, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know what products Plaintiffs may want or need in the future. Third, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful practices, the courts may be flooded with future lawsuits by Class members, Plaintiffs, and the general public for future violations of the law by Joybird.

200. In accordance with California Civil Code § 1782(a), Plaintiffs, through counsel, served Joybird with notice of its CLRA violations by certified mail, return receipt requested, on February 27, 2026. The letter demanded that Joybird cease engaging in the unlawful practices and properly compensate



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

Plaintiffs and all other consumers who purchased purportedly discounted products from the Joybird website.

201. Joybird failed to give, or to agree to give within a reasonable time, an appropriate remedy for its CLRA violations within 30 days of its receipt of the CLRA demand letter. Joybird has also refused to undertake or provide the required actions or corrections required by California Civil Code §1782(c). Accordingly, pursuant to Sections 1780 and 1782(b) of the CLRA, Plaintiffs and the Class are entitled to recover compensatory and exemplary damages, attorneys' fees and costs, and any other relief the Court deems proper for Joybird's CLRA violations.

## <u>COUNT II</u>

### Violation of California's False Advertising Law ("FAL") California Business & Professions Code § 17500 *et seq*.

202. Plaintiffs reallege and incorporate by reference all paragraphs previously alleged herein.

203. Plaintiffs bring this claim in their individual capacities, in their capacities as private attorneys general seeking the imposition of public injunctive relief, and as representatives of the Class.

204. Joybird has engaged in false or misleading advertising in violation of California Business & Professions Code § 17500, *et seq*., also known as California's False Advertising Law ("FAL").

205. Joybird has advertised discounts and reference prices that are false, misleading, and have a capacity, likelihood or tendency to deceive reasonable consumers. *See*, *e.g.*, *Kasky*, 27 Cal.4th at 951 (UCL and FAL prohibit "not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

confuse the public" (citation omitted)); *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 722 (2018) (same).

206. Additionally, Joybird has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not true former prices and were not the prevailing market price in the three months immediately preceding the advertisement. Nor do Joybird's former price advertisements state clearly, exactly, and conspicuously when, if ever, the former prices prevailed.

207. With respect to omissions, Joybird at all relevant times had a duty to disclose the information in question because, inter alia: (a) Joybird had exclusive knowledge of material information that was not known to Plaintiffs and Class members; (b) Joybird concealed material information from Plaintiffs and Class members; and (c) Joybird made partial representations which were false or misleading absent the omitted information.

208. Joybird committed such violations of the FAL with actual knowledge that its advertising was untrue or misleading, or Joybird, in the exercise of reasonable care, should have known that its advertising was untrue or misleading.

209. Joybird's misrepresentations and nondisclosures deceive and have a tendency to deceive the general public.

210. Joybird's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

211. As a direct and proximate result of Joybird's violations of the FAL, Plaintiffs and Class members were harmed, suffered injury-in-fact, and lost money or property.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

212. Plaintiffs and Class members reasonably relied on Joybird's material misrepresentations, and would not have purchased Joybird's products at the prices that they paid had they known the truth.

213. Additionally, Joybird's advertised limited-time discounts for its products were false and induced customers to purchase the products immediately before they supposedly returned to the (fictitious) reference price.

214. Plaintiffs and Class members did not receive the benefits of their bargains. Plaintiffs and Class members did not enjoy the actual discounts that Joybird represented and promised to them. Plaintiffs and Class members did not receive products that were worth the inflated amount that Joybird represented to them; the products did not regularly sell for, and were not actually worth, the fictitious and invented reference prices advertised by Joybird.

215. By its conduct and omissions alleged herein, Joybird caused the demand for its products to be artificially increased and caused all customers, including Plaintiffs and Class members, to pay price premiums to Joybird. Put differently, as a result of its misrepresentations, Joybird has been able to charge a price premium for its products that it would not be able to charge absent the misrepresentations. Without the misrepresentations, Joybird would have had to charge less for its products in order to enjoy the same level of demand.

216. By its conduct and omissions alleged herein, Joybird received more money from Plaintiffs and Class members than it should have received. Joybird should be ordered to disgorge or make restitution of all monies improperly accepted, received, or retained.

217. Plaintiffs seek an order granting restitution to Plaintiffs and Class members in an amount to be proven at trial. Plaintiffs further seek an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

218. **Permanent public injunctive relief.** Plaintiffs, acting as private attorneys general, seek public injunctive relief under the FAL to protect the


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

general public from Joybird's false advertisements, misrepresentations, and omissions.

219. Joybird's misconduct which affects and harms the general public is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Joybird absent a permanent public injunction. Accordingly, Plaintiffs seek an order enjoining Joybird from committing the unlawful practices alleged herein.

220. The balance of the equities favors the entry of permanent public injunctive relief against Joybird. Plaintiffs, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from Joybird's ongoing false advertising absent the entry of permanent public injunctive relief against Joybird.

221. Plaintiffs lack an adequate remedy at law to prevent Joybird from engaging in the unlawful practices alleged herein, as stated in Count I above.

222. Monetary damages are not an adequate remedy at law for future harm, as stated in Count I above.

## COUNT III

### Violation of California's Unfair Competition Law ("UCL")
### California Business & Professions Code § 17200 *et seq*.

223. Plaintiffs reallege and incorporate by reference all paragraphs previously alleged herein.

224. Plaintiffs bring this claim in their individual capacities, in their capacities as private attorneys general seeking the imposition of public injunctive relief, and as representatives of the Class.

225. California Business & Professions Code § 17200, *et seq*., also known as California's Unfair Competition Law ("UCL"), prohibits any unfair, unlawful, or fraudulent business practice.


HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

226. **<u>"Unlawful" Prong.</u>** Joybird has violated the UCL by engaging in the following unlawful business acts and practices:

a. Making material misrepresentations in violation of Cal. Civ. Code §§ 1770(a)(5), (9), (13), and (16) (the CLRA);

b. Making material misrepresentations and omissions in violation of Cal. Bus. & Prof. Code § 17500 *et seq.* (the FAL);

c. Engaging in deceit in violation of Cal Civ. Code §§ 1709–1710; and

d. Employing deceptive discount price advertisements as identified by 16 C.F.R § 233.1 *et seq.*

227. **<u>"Unfair" and "Fraudulent" Prongs.</u>** Joybird has violated the UCL by engaging in the following unfair and/or fraudulent business acts and practices:

a. Advertising false reference prices;

b. Advertising false discounts, including stated percentage-off and dollars-off discounts; and

c. Advertising false "limited-time" sales and discounts.

228. With respect to omissions, Joybird at all relevant times had a duty to disclose the information in question because, inter alia: (a) Joybird had exclusive knowledge of material information that was not known to Plaintiffs and Class members; (b) Joybird concealed material information from Plaintiffs and Class members; and (c) Joybird made partial representations which were false and misleading absent the omitted information.

229. Joybird's misrepresentations and nondisclosures deceive and have a tendency to deceive the general public.

230. Joybird's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

231. As a direct and proximate result of Joybird's violations of the UCL, Plaintiffs and Class members were harmed, suffered injury-in-fact, and lost money or property.

232. Plaintiffs and Class members reasonably relied on Joybird's material misrepresentations, and would not have purchased Joybird's products at the prices that they paid had they known the truth.

233. Additionally, Joybird's advertised limited-time discounts for its products were false and induced customers to purchase the products immediately before they supposedly returned to the (fictitious) reference price.

234. Plaintiffs and Class members did not receive the benefits of their bargains. Plaintiffs and Class members did not enjoy the actual discounts that Joybird represented and promised to them. Plaintiffs and Class members did not receive products that were worth the inflated amount that Joybird represented to them; the products did not regularly sell for, and were not actually worth, the fictitious reference price advertised by Joybird.

235. By its conduct and omissions alleged herein, Joybird caused the demand for its products to be artificially increased and caused all customers, including Plaintiffs and Class members, to pay price premiums to Joybird. Put differently, as a result of its misrepresentations, Joybird has been able to charge a price premium for its products that it would not be able to charge absent the misrepresentations. Without the misrepresentations, Joybird would have had to charge less for its products in order to enjoy the same level of demand.

236. By its conduct and omissions alleged herein, Joybird received more money from Plaintiffs and Class members than it should have received. Joybird should be ordered to disgorge or make restitution of all monies improperly accepted, received, or retained.

237. Joybird's conduct and omissions alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

injurious to Plaintiffs and Class members. Perpetrating a years-long scheme of misleading and overcharging customers is immoral, unethical, and unscrupulous. Moreover, Joybird's conduct is oppressive and substantially injurious to consumers. There is no utility to Joybird's conduct, and even if there were any utility, it would be significantly outweighed by the gravity of the harm to consumers caused by Joybird's conduct alleged herein.

238. Plaintiffs seek an order granting restitution to Plaintiffs and Class members in an amount to be proven at trial. Plaintiffs further seek an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

239. **Permanent public injunctive relief.** Plaintiffs, acting as private attorneys general, seek public injunctive relief under the UCL to protect the general public from Joybird's false advertisements, misrepresentations, and omissions.

240. Joybird's misconduct which affects and harms the general public is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Joybird absent a permanent public injunction. Accordingly, Plaintiffs seek an order enjoining Joybird from committing the unlawful practices alleged herein.

241. The balance of the equities favors the entry of permanent public injunctive relief against Joybird. Plaintiffs, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from Joybird's ongoing false advertising absent the entry of permanent public injunctive relief against Joybird.

242. Plaintiffs lack an adequate remedy at law to prevent Joybird from engaging in the unlawful practices alleged herein, as stated in Count I above.

243. Monetary damages are not an adequate remedy at law for future harm, as stated in Count I above.



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

## PRAYER FOR RELIEF

Plaintiffs Shaley German, Shannon Solander, and Brian Stere, on behalf of themselves and the proposed Class, request that the Court order relief and enter judgment against Defendant Stitch Industries, Inc. d/b/a Joybird as follows:

1. Declare this action to be a proper class action, certify the proposed Class, and appoint Plaintiffs and their counsel to represent the Class;

2. Declare that California law applies to the claims of Plaintiffs and the Class;

3. Order that the discovery rule applies to extend any applicable limitations period and the corresponding class period back to the date Joybird first engaged in the unlawful conduct alleged herein;

4. Declare that Joybird's conduct alleged herein violates the CLRA, FAL, and UCL;

5. Order disgorgement and/or restitution, including, without limitation, disgorgement of all revenues, profits and/or unjust enrichment that Joybird obtained, directly or indirectly, from Plaintiffs and Class members as a result of the unlawful conduct alleged herein;

6. Order Joybird to pay actual damages to Plaintiffs and Class members in an amount to be proven at trial;

7. Order Joybird to pay punitive and/or exemplary damages to the extent allowed by law;

8. Permanently enjoin Joybird from engaging in the unlawful conduct alleged herein;

9. Order that Joybird maintain the following records for at least two years for each daily product offering on its retail website from the date of each advertisement and/or offer for sale of the product, for auditing purposes to ensure compliance with the ordered public injunctive relief: (1) the advertised reference price for each product; (2) the offer price and/or net selling price of each product;



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

and (3) any discount or free offer that was advertised and/or applicable to each product;

10. Retain jurisdiction to monitor Joybird's compliance with the permanent public injunctive relief requested hereinabove;

11. Order Joybird to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

12. Grant such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

Date: May 26, 2026

Presented by:

HATTIS LUKACS & CORRINGTON

By: ______________________

Daniel M. Hattis (SBN 232141)
Email: dan@hattislaw.com
Paul Karl Lukacs (SBN 197007)
Email: pkl@hattislaw.com
HATTIS LUKACS & CORRINGTON
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650

*Attorneys for Plaintiffs*
*and the Proposed Class*